IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
WESTERN DIVISION

UNITED STATES OF AMERICA

v.                                    CAUSE NO. 5:21-cr-5-DCB-FKB

LAKETIA ANDREWS CROSSLEY                                DEFENDANT

ORDER

BEFORE THE COURT is Defendant Laketia Andrews Crossley's ("Defendant") Motion for Judgment of Acquittal or, in the Alternative, for a New Trial Pursuant to Rules 29 and 33 of the Federal Rules of Criminal Procedure ("Motion") [ECF No. 242]. The Court, having examined the Motion, the submissions of the parties, the record, the applicable legal authority, and being fully informed in the premises, finds as follows:

I.   Factual & Procedural Background

On July 28, 2021, a grand jury indicted Defendant on the following charges: (1) conspiracy to commit wire fraud in violation of 18 U.S.C. §§ 1343, 1349; (2) conspiracy to commit theft of federal money in violation of 18 U.S.C. § 641; and (3) theft of federal money or aiding and abetting theft of federal money in violation of 18 U.S.C. §§ 2, 641. [ECF No. 4] at 1-7. On November 16, 2022, by a second superseding indictment, a grand jury further indicted Defendant on the charge of making a false statement in violation of 18 U.S.C. § 10001. [ECF No. 177] at 9.

1

On March 1, 2023, at the conclusion of a three-day trial, the jury convicted the Defendant on all counts. Defendant moved for acquittal at the close of the Government's case in chief and renewed its motion after both sides rested. [ECF No. 240] at 2. The Court denied the Defendant's motion both times. Id.

On March 30, 2023, the Defendant filed this Motion, which the Court will now address. [ECF No. 242].

II. Legal Standard

On a motion for judgment of acquittal, a court "consider[s] whether the evidence is insufficient to sustain a conviction." Fed. R. Crim. P. 29(a). This standard is highly deferential to the jury and "asks whether a reasonable jury could conclude that the relevant evidence ... established all of the essential elements of the crime beyond a reasonable doubt when viewed in the light most favorable to the verdict." United States v. Loe, 262 F.3d 427, 432 (5th Cir. 2001). "The standard does not require that the evidence exclude every reasonable hypothesis of innocence or be wholly inconsistent with every conclusion except that of guilt ...." Id. Rather, "[a] jury is free to choose among reasonable constructions of the evidence. And it retains the sole authority to weigh any conflicting evidence and to evaluate the credibility of the witnesses." Id.

Rule 33(a) provides that "[u]pon the defendant's motion, the court may vacate any judgment and grant a new trial if the interest of justice so requires." Fed. R. Crim. P. 33(a). "[A] motion for new trial is reviewed under a more lenient standard than a motion for judgment of acquittal." Robertson, 110 F.3d at 1117. On a motion for a new trial, "the trial judge may weigh the evidence and may assess the credibility of the witnesses." Id. While the decision is "within the sound discretion of the trial court, ... [t]he court may not reweigh the evidence and set aside the verdict simply because it feels some other result would be more reasonable." Id. at 1118. To grant a new trial, "[t]he evidence must preponderate heavily against the verdict, such that it would be a miscarriage of justice to let the verdict stand." Id.

III. Analysis

In support of her Motion, Defendant challenges the sufficiency of the evidence introduced at trial that resulted in her conviction on all counts. See [ECF No. 242]. Having reviewed the evidence admitted at trial "in the light most favorable to the verdict," the Court finds that a reasonable trier of fact could have found guilt beyond a reasonable doubt based on that evidence. Loe, 262 F.3d at 432. As such, the Court finds

Defendant's Motion should be denied as to acquittal based on the sufficiency of the evidence.

Additionally, having reviewed the evidence, the Court finds its weight does not preponderate against the verdict, or that the denial of a new trial would result in a miscarriage of justice. Accordingly, the Court finds Defendant's Motion for a New Trial should likewise be denied.

The Court will first address Defendant's arguments regarding the need for a new trial. Defendant argues that (1) Defendant's limited capacity precluded the requisite mens rea to commit the charged offenses; (2) that the evidence is at the outer limit of sufficiency; and (3) that the jury heard potentially excludable evidence. [ECF No. 242] at 22-23.

Although Defendant submitted evidence clarifying that she attended "special classes" in school and has other comprehension issues, she failed to demonstrate that these factors rendered her unable to achieve the mens rea necessary for specific intent crimes. [ECF No. 242] at 22. Defendant has failed to explain how her mental condition negated her intent beyond generally alleging that she "was unaware that was she was doing was illegal." Id. Further, Defendant should have lodged any capacity objections prior to her conviction.

4

Defendant's second argument is also unpersuasive. Although the relevant standard is that "evidence must preponderate heavily against the verdict," Defendant argues that the evidence is right at, but not beyond, the border of sufficiency. Robertson, 110 F.3d at 1118 (emphasis added); [ECF No. 242] at 22. This does not warrant a new trial.

Defendant's final argument for a new trial regards evidence that she believes was potentially excludable under Rules 404(b) or 403. Id. at 23. Defendant argues that because the jury instructions for Count Four limited itself to only the statements included in the superseding indictment that evidence regarding other statements retroactively became potentially excludable. Id.

Nevertheless, Defendant admits that she did not contemporaneously object to this testimony at trial. Such a failure ordinarily precludes review except for a narrow plain error exception, which the Court recognizes would not save the Defendant here based on the limiting nature of the instructions. Puckett v. U.S., 556 U.S. 129, 135 (2009). Further, neither party objected to those instructions. [ECF No. 240] at 2. Although the retroactive nature of Defendant's argument somewhat distorts that analysis, the Court remains confident that the

admission of that evidence does not cause the verdict to be a "miscarriage of justice." Robertson, 110 F.3d at 1118.

As such, the Court will rely on its "sound discretion" to deny Defendant's Motion as it relates to requesting a new trial. Id. The Court will address Defendant's challenges to the sufficiency of the evidence that support her pursuit of an acquittal.

1. Count One

Count One, conspiracy to commit wire fraud in violation of 18 U.S.C. §§ 1343, 1349, required the jury to make the following findings beyond a reasonable doubt:

> (1) the defendant and at least one other person agreed to commit the crime of Wire Fraud, as charged in the indictment; (2) the defendant knew the unlawful purpose of the agreement and joined in it willfully, that is, with the intent to further the unlawful purpose; (3) the overall scope of the conspiracy involved devising or intending to devise any scheme to defraud, to wit: to obtain unemployment insurance benefits to which they were not entitled; (4) the scheme to defraud employed false material representations; (5) the defendant transmitted or caused to be transmitted by way of wire communications, in interstate commerce, any writing, sign, signal, picture or sound for the purposes of executing such scheme; and (6) the defendant acted with a specific intent to defraud.

6

[ECF No. 242] at 3. Defendant specifically challenges the sufficiency of the evidence regarding elements one, two, five, and six. Id.

The first element regards the illegal agreement. At trial, the Government produced two interviews with Defendant in which she admitted to receiving the pandemic assistance unemployment benefit debit cards for multiple incarcerated persons, activating those debit cards, and using a cell phone to communicate the operative numbers on those debit cards to enable the incarcerated persons to use the money stored electronically on the debit cards. [ECF No. 249] at 4-5. Two of Defendant's incarcerated co-conspirators, Marcus Parker and Sedrick Pittman, ultimately pleaded guilty to committing fraud and testified to their knowledge of the illegality of applying for these unemployment benefits. Id. at 5.

The second element regards knowledge of the scheme and the Defendant's willful participation. At trial, the Government's entered recorded interviews into evidence that included statements made by the Defendant that were ultimately proven untrue or partially true. Id. Additionally, the evidence at trial demonstrated that Defendant circumvented prison contraband rules by converting the debit cards into financial tools usable

7

by the inmates, such as Green Dot reloadable debit cards and Cash App transfers. Id. at 5-6.

The fifth element regards the use of an interstate wire communications. At trial, the Government put forth testimony from three government agents who confirmed the interstate nature of online pandemic unemployment application submissions and the resulting interstate wire transfers of those cash benefits. Id. at 7. Although Defendant might not have submitted those applications on behalf of her coconspirators, the nature of a conspiracy lends criminal liability for interstate wire transfers of any conspirator in furtherance of the conspiracy to all coconspirators, including Defendant. United States v. Faulkner, 17 F.3d 745, 771-72 (5th Cir. 1994).

The sixth element regards specific intent. At trial, the Government offered evidence demonstrating that Defendant communicated with Sedrick Pittman regarding the conspiracy. [ECF No. 249] at 7. Photographs and documentary evidence showed that Defendant cashed out the unemployment debit cards to transfer the funds into useful form for the incarcerated coconspirators. Id. at 8. Defendant also acknowledged that she benefitted financially from this scheme. Id.

2. Count Two

Count Two, conspiracy to commit theft of federal money in violation of 18 U.S.C. § 641, required the jury to make the following findings beyond a reasonable doubt:

> (1) that the defendant and at least one other person made an agreement to defraud the government or one of its agencies by making materially false and fraudulent pretenses and representations in order to fraudulently collect unemployment insurance (describe), as charged in the indictment; (2) that the defendant knew that the purpose of the agreement was to defraud the government and joined in it willfully, that is, with the intent to defraud; and (3) that at least one of the conspirators during the existence of the conspiracy knowingly committed at least one of the overt acts described in the indictment, in order to accomplish some object or purpose of the conspiracy.

[ECF No. 242] at 10. Defendant specifically challenges the sufficiency of the evidence regarding elements one and two. Id.

The first element regards an agreement to defraud the government. At trial, the Government presented evidence demonstrating that the Defendant agreed to receive at her residence the pandemic unemployment assistance to which her incarcerated conspirators applied and to then transfer those funds to them. [ECF No. 249] at 9-10.

The second element regards the Defendant's knowledge of the illegality of the agreement to defraud the government and her willful participation. Defendant informed a government agent in a recorded interview that fear did not motivate her compliance

9

in this criminal pursuit. Id. at 10. This demonstrates her willfulness. As discussed supra and now applied to this element, Defendant's acts to further the conspiracy and her subsequent misrepresentations and partial truths about her involvement demonstrate her knowledge that the purpose of the agreement was to illegally defraud the government. Id. at 5-12.

3. Count Three

Count Three, theft of federal money or aiding and abetting theft of federal money in violation of 18 U.S.C. §§ 2, 641, required the jury to make the following findings beyond a reasonable doubt:

> (1) the money described in the indictment belonged to the United States government; (2) the defendant stole or knowingly converted such money to the defendant's own use or to the use of another; (3) the defendant did so knowing that the money was not his or hers and with the intent to deprive the owner of the use or benefit of the money; and (4) that such property then had a value in excess of $1,000.

[ECF No. 242] at 12. Defendant specifically challenges the sufficiency of the evidence regarding elements two and four. Id.

The second element regards a knowing theft of money for the Defendant's or another's use. As discussed supra and now applied to this element, Defendant's acts to further the conspiracy and her subsequent misrepresentations and partial truths about her involvement demonstrate her knowledge that her conversion of

pandemic unemployment benefits for her use and the use of her incarcerated coconspirators amounted to a knowing theft. Id. at 5-14. Further, as discussed above, Defendant is criminally liable for acts of coconspirators before and during her involvement in the conspiracy. Faulkner, 17 F.3d at 771-72. Defendant cannot evade liability merely because she did not personally file the pandemic assistance applications for her coconspirators.

The fourth element requires the value of that property to exceed $1,000. Each of Defendant's incarcerated coconspirators received over $1,000. [ECF No. 249] at 14. Although Defendant did not steal this entire amount for her use alone, well over the minimum amount in aggregate went to her coconspirators. Id. As such, Defendant surpassed the requirements of the fourth element. 18 U.S.C. § 641.

Defendant further contests the sufficiency of the evidence involving the accompanying aiding and abetting instruction which required the following findings beyond a reasonable doubt:

> (1) the offense of theft of government money was committed by some person; (2) the defendant associated with the criminal venture; (3) the defendant purposefully participated in the criminal venture; and (4) the defendant sought to make that venture successful.

[ECF No. 242] at 12-14. Defendant specifically challenges the specific intent requirement inherent to aiding and abetting in the same vein that she challenged Count One and Count Two. Id. at 14. As discussed supra, Defendant's acts that furthered the conspiracy and her subsequent lies and partial truths about her involvement provided ample evidence for a jury to find that Defendant had the specific intent to aid and abet for Count Three. [ECF No. 249] at 5-13.

4. Count Four

Count Four, making a false statement in violation of 18 U.S.C. § 10001, required the jury to make the following findings beyond a reasonable doubt:

"To violate [18 U.S.C.] § 1001, the defendant must have: (1) made a statement; (2) that was false; (3) and material; (4) knowingly and willfully; and (5) that falls within agency jurisdiction." United States v. Hoover, 467 F.3d 496, 499 (5th Cir. 2006). Defendant specifically challenges the sufficiency of the evidence regarding elements three and four. [ECF No. 242] at 15-21.

The indictment specifically alleges that the Defendant, when interviewed by the U.S. Department of Labor Office of Inspector General, represented that she had not received a

12

Mississippi Department of Employment Security debit card issued to Marcus Parker. [ECF No. 177] at 9.

The third element regards the materiality of the false statement. Materiality requires that the "statement must have a natural tendency to influence or be capable of influencing the decision of the decision[-]making body to which it was addressed." United States v. Najera Jimenez, 593 F.3d 391, 399 (5th Cir. 2010) (internal citations omitted). Defendant argues that her statements were not capable of influencing the government agent investigating this theft because she acknowledged and corrected her statement within one minute. [ECF No. 242] at 20-21. Nevertheless, the statement, when Defendant first uttered it, had a "natural tendency" of misleading and influencing the government agent. Jimenez, 593 F.3d at 399. As the relevant jury instruction stated, actually misleading the agent was not necessary. [ECF No. 249] at 17. As such, the jury reasonably concluded the statement was material.

The fourth element requires that the statement be made knowingly and willingly. As discussed throughout this Order, the evidence put forth at trial of Defendant's multiple overt acts in furtherance of this criminal conspiracy and her false statements intended to conceal those acts demonstrate that she acted knowingly and willingly. Id. at 5-18.

Defendant further argues that her statements were not made knowingly or willingly because of (1) ambiguity in the agent's questioning—specifically the agent's use of the words "familiar with" versus "know"—and (2) the differences between the agent's questions and the indictment—specifically the agent's use of the word "money" versus "debit card" as provided in the indictment. [ECF No. 242] at 15-19.

When an interrogator's question is "arguably ambiguous," "the defendant's understanding of the question is a matter for the jury to decide." United States v. Bell, 623 F.2d 1132, 1136 (5th Cir. 1980). The agent's questioning—whether Defendant was familiar with Marcus Parker—was not fundamentally ambiguous; at worst, it was a slightly ambiguous departure from more precise questioning. United States v. Manapat, 928 F.2d 1097, 1099 (11th Cir. 1991).

Likewise, the difference between "money" as asked by the agent and "debit card" as used in the indictment is unpersuasive. As the Defendant points out, she corrected her statement within one minute to confirm her receipt of the pandemic assistance on behalf of Marcus Parker. [ECF No. 242] at 21. If anything, the more expansive term "money" encapsulates the exact medium of containing the money, "debit card", as used in the indictment. Such a minor deviation in word choice cannot

14

form the basis for an acquittal when it appears the Defendant and the jury understood its usage in ordinary parlance.

IV. Conclusion

"When addressing motions for acquittal, the Court reviews the evidence as well as all reasonable inferences from the evidence in the light most favorable to the verdict." United States v. Young, 547 F. Supp. 3d 575, 581 (N.D. Tex. 2021)(citing United States v. Johnson, 990 F.3d 392, 398 (5th Cir. 2021)). The testimony and exhibits introduced at trial were sufficient to support the jury's guilty verdict. As such, the Court finds that the jury's verdict should not be disturbed, and this Motion must be denied.

For the foregoing reasons, Defendant's Motion [ECF No. 242] shall be DENIED.

ACCORDINGLY,

IT IS HEREBY ORDERED that Defendant's Motion for Judgment of Acquittal or, in the Alternative, for a New Trial [ECF No. 242] is DENIED.

SO ORDERED, this 11th day of May, 2023.

/s/ David Bramlette
DAVID C. BRAMLETTE
UNITED STATES DISTRICT JUDGE